PTH:NMA
F. # 2020R00589

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                            Docket No.  20-CR-295 (WFK)

STEVEN CARTER,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS

JACQUELYN M. KASULIS
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Nick M. Axelrod
Assistant U.S. Attorney
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT......................................................................................................... 9

I.   The Defendant's Motion Should Be Denied
     Without An Evidentiary Hearing ...................................................................... 10

     A.  The Defendant Is Not Entitled To An Evidentiary Hearing.................................. 10

II.  The Officers' Pat-down And Arrest Of
     The Defendant Complied With The Fourth Amendment .................................... 11

     A.  The Officers' Reasonable Suspicion
         That There Was A Gun In The Defendant's Bag......................................... 11

     B.  The Officers Had Probable Cause To Arrest The Defendant ..................................... 16

III. The Defendant's Spontaneous Admissions
     During Booking Should Not Be Suppressed ..................................................... 16

CONCLUSION.................................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

## CASES

Cameron v. Smith,
   Case No. 11-CV-5100 (BMC),
   2012 WL 1004893 (E.D.N.Y. Mar. 23, 2012)......................................................................... 9

Florida v. Bostick,
   501 U.S. 429 (1991)................................................................................................................ 14

In re Terrorist Bombings of U.S. Embassies in E. Africa,
   552 F.3d 157 (2d Cir. 2008) ............................................................................................... 8, 10

Jackson v. Conway,
   763 F.3d 115 (2d Cir. 2014) .................................................................................................. 17

Lipton v. Nature Co.,
   71 F.3d 464 (2d Cir. 1995) .................................................................................................... 10

Miranda v. Arizona,
   384 U.S. 436 (1966).......................................................................................................... 7, 15

Pennsylvania v. Muniz,
   496 U.S. 582 (1990)...................................................................................................... 15, 16

Rakas v. Illinois,
   439 U.S. 128 (1978).............................................................................................................. 10

Renteria v. Clark,
   Case No. 08-cv-00547 (AWI),
   2009 WL 256575 (E.D. Cal. Feb. 4, 2009)............................................................................ 18

Rhode Island v. Innis,
   446 U.S. 291 (1980).............................................................................................................. 15

Rosa v. McCray,
   396 F.3d 210 (2d Cir. 2005) ................................................................................................ 15

Terry v. Ohio,
   392 U.S. 1 (1968).................................................................................................................. 10

United States v. Bailey,

    743 F.3d 322 (2d Cir. 2014) .............................................. 11

United States v. Blake,

    Case No. 16-CR-194 (MKB),

    2017 WL 626603 (E.D.N.Y. Feb. 15, 2017) ..................... 12

United States v. Briggs,

    273 F.3d 737 (7th Cir. 2001) .............................................. 17

United States v. Carrero,

    Case No. 98-CR-959 (MBM),

    1999 WL 97906 (S.D.N.Y. Feb. 24, 1999)....................... 13

United States v. Compton,

    830 F.3d 55 (2d Cir. 2016) ................................................ 14

United States v. Davis,

    111 F. Supp. 3d 323 (E.D.N.Y. 2015) .............................. 12

United States v. Durand,

    767 F. App'x 83 (2d Cir. 2019) ......................................... 16

United States v. Elmore,

    482 F.3d 172 (2d Cir. 2007) .............................................. 11

United States v. Galan,

    Case No. 14-CR-450 (RMM),

    2015 WL 1602151 (E.D.N.Y. April 9, 2015) ................... 13

United States v. Gillette,

    383 F.2d 843 (2d Cir. 1967) ................................................ 8

United States v. Glover,

    957 F.2d 1004 (2d Cir. 1992) ............................................ 14

United States v. Grant,

    Case No. 07-CR-729 (SJ),

    2008 WL 897805 (E.D.N.Y. Mar. 31, 2008)................... 12

United States v. Hamilton,

    538 F.3d 162 (2d Cir. 2008) .............................................. 10

United States v. Hamilton,

   Case No. S2 15-CR-854 (LTS),

   2017 WL 2275023 (S.D.N.Y. May 24, 2017) .................................................................. 13

United States v. Hightower,

   Case No. 19-CR-459 (LDH),

   2020 WL 1821335 (E.D.N.Y. Apr. 10, 2020) ................................................................. 14

United States v. Jacobson,

   4 F. Supp. 3d 515 (E.D.N.Y. 2014) ................................................................................ 17

United States v. Lopez,

   432 F. Supp. 3d 99 (D. Conn. 2020) ............................................................................... 14

United States v. Lucas,

   68 F. App'x. 265 (2d Cir. 2003) ..................................................................................... 13

United States v. Mathurin,

   148 F.3d 68 (2d Cir. 1998) (per curiam) .......................................................................... 9

United States v. Monroe,

   Case No. 08-CR-609 (ENV),

   2009 WL 3614521 (E.D.N.Y. Nov. 2, 2009) ................................................................. 12

United States v. Nogueira,

   Case No. 08-CR-876 (JG),

   2009 WL 3242087 (E.D.N.Y. Oct. 6, 2009) ................................................................... 16

United States v. Padilla,

   548 F.3d 179 (2d Cir. 2008) ........................................................................................... 11

United States v. Payne,

   954 F.2d 199 (4th Cir. 1992) .......................................................................................... 18

United States v. Place,

   462 U.S. 696 (1983) ........................................................................................................ 11

United States v. Rios,

   Case No. 09-CR-369 (CPS),

   2009 WL 2602202 (E.D.N.Y. Aug. 24, 2009) ............................................................... 12

United States v. Robinson,

  Case No. 04-CR-315 (CFD),

  2006 WL 923695 (D. Conn. Apr. 6, 2006).......................................................... 10

United States v. Sanchez-Villar,

  99 F. App'x 256 (2d Cir. 2004) ...................................................................... 15

United States v. Sokolow,

  490 U.S. 1 (1989)............................................................................................ 11

United States v. Spencer,

  Case No. 06-CR-413 (DLI),

  2016 WL 6781225 (E.D.N.Y. Nov. 15, 2016) ................................................... 9

United States v. Walia,

  Case No. 14-CR-213 (MKB),

  2014 WL 2533848 (E.D.N.Y. June 5, 2014) ..................................................... 9

United States v. Weaver,

  9 F.4th 129 (2d Cir. 2021) (en banc) ......................................................... 13, 16

United States v. Wilson,

  493 F. Supp. 2d 364 (E.D.N.Y. 2006) ............................................................. 9

## STATUTES

18 U.S.C. § 922...................................................................................................... 7

New York Penal Law § 160.10............................................................................... 7

New York Penal Law § 165.01-B........................................................................... 7

New York Penal Law § 265.03............................................................................... 7

## OTHER AUTHORITIES

DAVID M. NISSMAN & ED HAGEN, LAW OF CONFESSIONS § 5.8 ........................... 18

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the defendant's motion to suppress physical evidence seized from his bag at the time of his arrest on April 29, 2020, and his subsequent post-arrest statements.  See Motion to Suppress ("Mot." or the "Motion") at 1 (ECF No. 29).  The defendant's motion claims he was illegally seized and searched, but it relies on an attorney affidavit that fails to provide any facts based on personal knowledge to contest the search, as the law plainly requires.  The government respectfully submits that the Court should deny the Motion without a hearing.

Even setting aside the defendant's failure to establish the legal basics — an affidavit based on personal knowledge — the officers' stop and eventual search and arrest of the defendant complied with the Fourth Amendment.  Three New York City Police Department ("NYPD") officers conducting an anti-crime patrol noticed the defendant standing alone on a street corner at approximately 11:30 p.m. holding a wrinkled brown paper bag.  The area was known to the officers to be dangerous, and even from a distance one of the officers recognized the bag contained a heavy object that appeared to end in a point at the bottom of the bag and which they suspected was a weapon.  That suspicion was confirmed as they approached the defendant and he clutched the bag, revealing the tell-tale "L-shape" of a firearm.  The officers' suspicion was corroborated further by the defendant's nervous behavior and efforts to hide the bag behind his leg.  A Terry patdown of the bag revealed an object one of the officers recognized as a firearm, and, in fact, the bag contained a Smith & Wesson .40 caliber handgun loaded with 12 rounds, establishing probable cause for the defendant's arrest.

The defendant's subsequent admission that he had borrowed his cousin's gun because he didn't like the neighborhood was not taken in violation of the Fifth Amendment.

1

He made this statement in response to "pedigree" questions about his name and address, unbidden by the officers who could not reasonably have expected their basic and innocuous questions to prompt an incriminating response.  <u>Miranda</u> protects defendants from coercive interrogation, not their own spontaneous admissions.

       For these reasons, and the reasons that follow, the Motion should be denied without a hearing.

## STATEMENT OF FACTS

At approximately 11:36 p.m. on April 29, 2020, NYPD officers on patrol arrested the defendant after they noticed the defendant standing alone on a street corner holding a wrinkled brown paper bag in which the outline of a gun was visible.  In the event of an evidentiary hearing, the government expects to establish the following facts:[1]

On April 29, 2020 NYPD Officers Kevin Morgan, Phillip Bilmes, and Renaldo Weekes were conducting an anti-crime patrol in the 75th precinct in East New York.  The Citywide Anticrime Team was a specialized unit of police personnel focused on combatting violent crime and firearms-related offenses.  The officers were in an unmarked car.  Officer Morgan — the driver — was at the time a 10-year veteran of the NYPD with significant experience on the Anticrime Team.  Officer Bilmes, a 5-year veteran, was in the front passenger seat.  Officer Weekes, who was also a 5-year veteran, was seated in the backseat behind the driver.  All three officers also had prior experience as patrolmen in the 75th precinct.

At approximately 11:32 p.m. the officers were driving southbound on Milford Street in East New York.  They were driving slowly as they approached two stop signs at the triangular intersection of Milford Street, New Lots avenue, and Dumont Avenue.  The intersection is in a high crime area, known to Officer Morgan to have a history of drug activity, multiple shootings, and homicides.  The defendant was standing alone on the southeast corner holding a small, visibly-aged brown paper bag with paper handles.  The

---

[1]      Except where otherwise indicated, all statements set forth in this memorandum are provided in sum and substance and in part.

defendant had the handles around his wrist and the bag hanging from his hand.  The area is well lit by a streetlamp near the southwest corner of the intersection.  There was nothing obstructing Officer Morgan's view of the defendant.

As the officers approached the intersection, Officer Morgan noticed the defendant.  From a distance, approximately 30-40 feet, Officer Morgan believed there was a heavy object straining the bag.  Initially, Officer Morgan believed it could be a liquor bottle, but the narrow point at bottom of the bag indicated to Officer Morgan that it was something else.  The obvious age and wear on the bag also suggested to him that it was not the sort of bag a store might use.  As the car drew closer, Officer Morgan told the other officers to keep an eye on the bag.  Officer Morgan made eye contact with the defendant from across the street.  The defendant appeared to Officer Morgan to be nervous and he looked away from the officers' car, eastbound on Dumont Avenue.  As the officers crossed the second stop-sign (at Dumont Avenue), the defendant clenched the top of the bag with his hand, which tightened the bag across the object inside.  From approximately 10 feet from the defendant, Officer Morgan could see the outline of an L-shaped object or an "upside down seven" in the bag, which he believed to be a firearm.  Still gripping the bag, the defendant moved it behind his left leg, attempting to conceal it from the officers' line of sight.  With his other hand, he put his phone to his ear and looked away from the officers.

Officer Weekes exited the rear door of the vehicle and approached the defendant.  The defendant was visibly sweating, even though it was not warm on the night of

4

April 29, 2020[2] and the defendant was wearing a sweatshirt.  The defendant wiped his brow with his arm.  See Ex. B (video recording from Officer Weekes's body camera) at 23:32:59.

Officer Weekes asked the defendant "what's up man."  The defendant told Officer Weeks he was waiting on someone, and, gesturing to a woman nearby, said "this is my beautiful lady friend walking up," Ex. A (video recording from Officer Morgan's body camera) at 23:32:56.  Officer Morgan exited the car, approached the defendant and said "two minutes out of your life and you go on your way."  Ex. A at 23:32:59.[3]  Officer Weekes asked the defendant what was in the bag.  The defendant responded, "nothing but my belongings, sir."  See Ex. A at 23:33:00–01.  As he said this, Officer Morgan, who had already seen the outline of an L-shaped object in the bag and observed the defendant, who was sweating, try to hide the bag, reached for the bag and patted both sides of the bag.  Officer Morgan felt an object he recognized as a firearm in the bag.  He opened the bag and saw a firearm.

Officer Morgan placed the defendant in cuffs and led him to the front of the officers' car.  See Ex. A at 23:33:20–36.  Officer Morgan asked the defendant if he had identification and for his name.  See id. at 23:33:35–37.  The defendant identified himself as

---

[2]     According to data from the nearest National Weather Service station at John F. Kennedy International Airport, the low temperature on April 29, 2020 was 42 degrees and the high was 55 degrees.  See https://www.weather.gov/wrh/Climate?wfo=okx.  The defendant was arrested at approximately 11:30 p.m.

[3]     The time-stamps for the body camera footage from Officer Morgan and Officer Weekes differ slightly.  For instance, Officer Morgan's statement to the defendant that they needed "two minutes out of [his] life" occurs at 23:33:06 in the recording from Officer Weekes's body camera and seven seconds earlier, at 23:32:59, in the recording from Officer Morgan's body camera.

Steven Carter, id. at 23:33:55, and said that his identification was in his back pocket, id. at 23:34:04.  Officer Morgan asked the defendant if he had ever been arrested, Ex. A at 23:34:17, the defendant responded "yes sir," but did not respond when Officer Morgan asked how long ago.  Officer Morgan then asked the defendant if he was on parole or probation, and the defendant said he was not.  See Ex. A at 23:34:24.  Approximately a minute later, after stowing the paper bag and firearm in the officers' car, Officer Morgan asked the defendant where he lived.  See Ex. A at 23:35:19.  In response, the defendant stated that his family was staying "not too far from here."  Id. at 23:35:21.  He said he was "waiting for my ride, [and] didn't know they pulled up already."  Id. at 23:35:25.  He then continued, "I don't like this you know what I mean," and gestured with his head to indicate the surrounding area. Id. at 23:35:30.  Officer Morgan said "mmhmm."  Id. at 23:35:31.  The defendant continued, "this side of the neighborhood, you know what I mean, [I] asked my cousin if I could borrow his piece while I came over here to meet her [referring to the woman nearby]."  Id. at 23:35:32–36.  The officers put the defendant in the officers' vehicle and transported him to the 75th precinct house, where he was processed.

The firearm recovered from the defendant was a Smith & Wesson .40 caliber semi-automatic pistol, model SD40 VE, serial number FYJ5832.  It was loaded with 12 rounds of .40 caliber S&W Remington and Federal ammunition.  The firearm was partially wrapped in a red piece of fabric, with the slide and sights exposed.  A piece of blue cloth was at the bottom of the bag.  Photos of the firearm and the brown paper bag taken at the precinct house after the defendant's arrest are below:

 

On April 30, 2020, the defendant was charged by complaint in Kings County Supreme Court with, among other things, criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03(1)(B) and (3).  On August 6, 2020, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[4]  ECF No. 1.

The defendant filed the instant motion on September 5, 2021.  The Motion contends he was illegally searched and seized in violation of the Fourth Amendment and that his statements should be suppressed pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Mot. ¶ 2.  The Motion relies on an attorney affidavit and few facts.  It contends the defendant

---

[4]      On February 27, 2012, the defendant was convicted of attempted robbery in the second degree, in violation of New York Penal Law § 160.10, a class D felony.  On August 28, 2014, the defendant was convicted of criminal possession of a firearm, in violation of New York Penal Law § 165.01-B, a class E felony.

was standing on the corner holding a bag of "personal belongings" when the officers

approached him and patted down the bag, he claims without reasonable suspicion.  Mot. ¶¶ 4,

8.  It further contends that the defendant made an incriminating statement — that he had

borrowed his cousin's gun — in response to the officers' questions about where he lived.

Mot. ¶ 5.

ARGUMENT

The government respectfully submits that the Court should deny the
defendant's motion to suppress without a hearing.  The Motion is legally insufficient because
it is not supported by an affidavit based on personal knowledge.  And it is factually
insufficient because it fails to establish facts, which, if credited, would be grounds to
suppress the handgun and ammunition recovered from the defendant's bag or his post-arrest
statements.

The officers' actions complied with the Fourth Amendment.  As <u>Terry</u>
requires, the officers' stop and simultaneous patdown of the defendant was supported by a
reasonable suspicion that he was carrying a firearm.  As they approached the defendant,
Officer Morgan observed the outline of an L-shaped object in the defendant's bag.  That
observation alone establishes reasonable suspicion, as Courts in this district have repeatedly
held.  But that observation was also supported by other cause for suspicion: the officers were
in a high-crime area; the defendant was nervous and sweating; and he attempted to conceal
the bag from the officers as they approached.  The officers' reasonable suspicion was
confirmed and probable cause to arrest was established when Officer Morgan found the gun
in the bag.

The officers' actions also complied with the Fifth Amendment.  Well-
established case law permits pedigree questions, including requests for an arrestee's name
and address.  In response to these questions, the defendant admitted to borrowing the gun
from his cousin.  Put differently, the defendant's statement was spontaneous, not in response
to coercive interrogation by the officers.

I.      The Defendant's Motion Should Be Denied Without An Evidentiary Hearing

     A.      The Defendant Is Not
           Entitled To An Evidentiary Hearing

        The Court should deny the defendant's motion without a hearing because he has failed to proffer a sufficient factual basis to establish a material factual dispute.  A defendant has no absolute right to an evidentiary hearing on a motion to suppress evidence. See In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 157, 165 (2d Cir. 2008) ("[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.") (internal quotation marks and citation omitted).  In other words, there must be a material factual dispute for a hearing to be justified.  See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967) (stating that suppression hearing is available only if there is a "factual issue to be resolved").  "If the defendant's request for a hearing is not accompanied by a sufficient 'specification of the factual basis for the characterization, the district court is not required to have a hearing.'"  United States v. Spencer, Case No. 06-CR-413 (DLI), 2016 WL 6781225, at *5 (E.D.N.Y. Nov. 15, 2016) (quoting United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998) (per curiam) (alteration omitted)); see also Cameron v. Smith, Case No. 11-CV-5100 (BMC), 2012 WL 1004893, at *3–4 (E.D.N.Y. Mar. 23, 2012) ("[W]hen a defendant does not challenge [the basis for a search or seizure] except with a conclusory assertion by his attorney . . . , no evidentiary hearing is required.").

        The bare-bones affidavit submitted by the defendant's counsel (the "Affidavit") is insufficient.  As Courts in this district have repeatedly explained, an affidavit

from an attorney lacking personal knowledge is insufficient to create a material dispute of fact.  See, e.g., United States v. Walia, Case No. 14-CR-213 (MKB), 2014 WL 2533848, *1–2 (E.D.N.Y. June 5, 2014) (holding, in context of motion to suppress post-arrest statements, that "no hearing is required if the defendant fails to support the factual allegations of the motion with an affidavit from a witness with personal knowledge"); United States v. Wilson, 493 F. Supp. 2d 364, 381 (E.D.N.Y. 2006) (denying evidentiary hearing in context of motion to suppress because the defendant "failed to supply the court with affidavits of persons with personal knowledge of facts sufficient to justify a hearing").  Moreover, the Affidavit does not dispute any of the facts set forth above and discussed in detail below that established reasonable suspicion for the stop.  Rather, it summarily states that the defendant "was standing on the corner" "holding a bag of personal belongings" at the time of his arrest.  See Mot. ¶ 4.  More is required to be entitled to an evidentiary hearing.  "[M]ere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (citation and internal quotation marks omitted); In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d at 165 (moving papers must be "sufficiently definite, specific, detailed, and nonconjectural").

II.     The Officers' Pat-down And Arrest Of The Defendant Complied With The Fourth Amendment

        A.      The Officers' Reasonable Suspicion
                That There Was A Gun In The Defendant's Bag

        The officers had reasonable suspicion to pat down the defendant's bag.  Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, a police officer may detain an individual for questioning if the officer has "a reasonable suspicion that the individual is, has been, or is

11

about to be engaged in criminal activity." United States v. Padilla, 548 F.3d 179, 186 (2d

Cir. 2008) (citation and quotation marks omitted); see also United States v. Place, 462 U.S.

696, 702 (1983) (finding that a stop requires only a "reasonable, articulable suspicion").  The

Supreme Court has emphasized that reasonable suspicion requires merely "some minimal

level of objective justification for making a stop." United States v. Sokolow, 490 U.S. 1, 7

(1989) (citation and quotation marks omitted).  "The likelihood of criminal activity need not

rise to the level required for probable cause, and it falls considerably short of satisfying a

preponderance of the evidence standard." United States v. Elmore, 482 F.3d 172, 179

(2d Cir. 2007) (quoting United States v. Arvizu, 534 U.S. 266, 273–74 (2002) (internal

quotation marks omitted)); see also United States v. Bailey, 743 F.3d 322, 332 (2d Cir.), cert.

denied, 135 S.Ct. 705 (Dec. 1, 2014) (Reasonable suspicion "is less than probable cause,

requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity may

be afoot and that the person stopped may be armed  . . . .") (alteration in original) (internal

quotation marks omitted) (citing Terry, 392 U.S. at 30).

 Essentially the same standard applies to an accompanying patdown.  "To

support an accompanying patdown [after a Terry stop], there must be a reasonable basis to

think "that the person is armed and dangerous." Bailey, 743 F.3d at 332 (internal quotation

marks omitted).  "The standard for reasonable suspicion to justify a protective pat down is

the same as that to justify an investigatory stop: it must be based on 'specific and articulable

facts' which provide a reasonable basis to conclude that the person stopped "may be armed

and presently dangerous." Id.  "If reasonable suspicion is present, the officer 'may take steps

to assure [him]self that the person with whom []he is dealing is not armed with a weapon that

could unexpectedly and fatally be used against h[im].'" United States v. Davis, 111 F. Supp.

3d 323, 338 (E.D.N.Y. 2015) (quoting <u>United States v. Wilson</u>, 94 F. App'x 14, 15–16 (2d

Cir. 2004)) (alterations in the original).

            From the moment Officer Weekes and Officer Morgan approached the

defendant, they had reasonable suspicion to believe he illegally possessed a firearm and, for

the same reasons, a reasonable basis to conduct a protective patdown.  From a distance,

Officer Morgan noticed the defendant standing alone holding a wrinkled paper bag, which

appeared to him to contain a heavy object that was straining the bag.  Initially he thought it

might be a liquor bottle, but the age of the bag and narrow point at the bottom of the bag

were inconsistent with that possibility.  He told the other officers to keep an eye on the bag.

And, as they approached, from approximately 10 feet away, Officer Morgan saw the

distinctive L-shape of a firearm in the wrinkled bag as the defendant clenched the bag in his

hand, constricting the bag.  That fact alone — that Officer Morgan recognized the shape of a

firearm in the defendant's wrinkled paper bag — was a sufficient basis to pat down the

defendant.  <u>See</u> <u>United States v. Blake</u>, Case No. 16-CR-194 (MKB), 2017 WL 626603, at

*2, *4 (E.D.N.Y. Feb. 15, 2017) (upholding search based on an "L-shaped" object in the

groin area of the defendant's fitted sweatpants); <u>United States v. Monroe</u>, Case No. 08-CR-

609 (ENV), 2009 WL 3614521, at *3 (E.D.N.Y. Nov. 2, 2009) (upholding stop, search and

seizure where officer thought the defendant had "weapon because the object in his back

pocket formed an L-shape and appeared to weigh down his pants"); <u>United States v. Rios</u>,

Case No. 09-CR-369 (CPS), 2009 WL 2602202, at *1, *5 (E.D.N.Y. Aug. 24, 2009)

(upholding stop, search and seizure where officer observed "the 'L-shape' outline of a gun"

in the defendant's pants pocket and was able to determine that it was a gun because of its L-

shape and his experience); <u>United States v. Grant</u>, Case No. 07-CR-729 (SJ), 2008 WL

897805, at *5 (E.D.N.Y. Mar. 31, 2008) ("The bulge here was not just an undefined heavy

object; the distinct shape of a handgun could be made out beneath the defendant's T-shirt and

shorts."); United States v. Hamilton, Case No. S2 15-CR-854 (LTS), 2017 WL 2275023, at

*2 (S.D.N.Y. May 24, 2017) (feeling an object in the defendant's pants and "perceiving it to

be a firearm, based on its 'L-shape'"); United States v. Carrero, Case No. 98-CR-959

(MBM), 1999 WL 97906, at *1, *4 (S.D.N.Y. Feb. 24, 1999) (upholding search where

officer saw "an obvious L-shaped object in his left front pants pocket" and knew what a

firearm would look like in a pocket based on his experience); see also United States v. Lucas,

68 F. App'x. 265, 266–67 (2d Cir. 2003) ("The officer's personal observation of an object

that appeared to be a gun created adequate reasonable suspicion to believe that [the

defendant] was unlawfully possessing a firearm, and justified conducting a limited weapons

search . . . .").

        Officer Morgan's recognition of the L-shaped object in the bag was

corroborated by the circumstances and his experience.  Officer Morgan was familiar with the

area around the intersection of Dumont Avenue and Milford Street, which has a history of

violent crime, including shootings and homicides — a fact the defendant himself appeared to

acknowledge when he told the officers he didn't like "this side of the neighborhood."  See

United States v. Weaver, 9 F.4th 129, 151 n.86 (2d Cir. 2021) (en banc) ("[T]he fact that

police stopped [the defendant] in a high-crime area — specifically, one characterized by a

high rate of violence, including gun violence — is a significant factor that meaningfully

contributed to the reasonable suspicion that he was armed.").  The defendant was also alone

and it was late at night.  See United States v. Galan, Case No. 14-CR-450 (RMM), 2015 WL

1602151, at *5 (E.D.N.Y. April 9, 2015) (defendant's presence in a high crime area alone late at night is relevant to reasonable suspicion).

The officers' suspicions were also confirmed by the defendant's behavior.[5] The defendant was sweating, so much so that he wiped his brow with his sleeve.  See Ex. B at 23:32:59; United States v. Glover, 957 F.2d 1004, 1010 (2d Cir. 1992) (finding reasonable suspicion based on, among other things, the fact that the defendant was "sweating from his face and brow").  The defendant also moved the bag behind him so that it was out of the officers' line of sight as they approached.  See Weaver, 9 F.4th at 147–48 ("[U]nusual, evasive, or furtive behavior, especially in the presence of law enforcement, is often a critical factor in the reasonable suspicion analysis.  We use the term "furtive" advisedly here to describe specific testimony . . .  that Weaver engaged in conduct suggesting that he was hiding something from the police."); United States v. Lopez, 432 F. Supp. 3d 99, 113 (D. Conn. 2020) ("[c]ourts have consistently approved Terry stops and frisks when the defendant has placed his hands out of a police officer's line of vision."  (quoting United States v. Torres, Case No. 02-CR-1433 (FB), 2003 WL 22272152, at *1 (E.D.N.Y. Oct. 3, 2003))).

───────────────

[5]    The defendant was not "seized" for purposes of the Fourth Amendment at the time he wiped his brow .  To that point, the only interaction between the officers and the defendant was Officer Weekes's approach and question ("what's up man").  See Ex. B at 23:32:59; Ex. A at 23:32:53.  See Florida v. Bostick, 501 U.S. 429, 434 (1991) (Explaining that a seizure that triggers Fourth Amendment protects occurs only when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ."); United States v. Compton, 830 F.3d 55, 65 (2d Cir. 2016) ("A consensual encounter becomes a Terry stop when under the circumstances, a reasonable person would have believed that he was not free to leave.") (internal quotations and citation omitted).

B.     The Officers Had Probable Cause To Arrest The Defendant

Once Officer Morgan felt the outline of a gun in the bag, the officers had

probable cause to conduct a more thorough search of the bag and to arrest the defendant.  See

United States v. Hightower, Case No. 19-CR-459 (LDH), 2020 WL 1821335, at *5

(E.D.N.Y. Apr. 10, 2020) ("Under Terry, officers are permitted to conduct a more extensive

search beyond a suspect's clothing where, during a pat-down search, the officer feels what he

reasonably believes is a weapon on the suspect's person.").  Officer Morgan saw what he

recognized as the sights and slide of a firearm in the bag, and the defendant was arrested.

See United States v. Sanchez-Villar, 99 F. App'x 256, 258 (2d Cir. 2004) ("The discovery of

the firearm, however, provided the officers with sufficient probable cause that a crime under

New York law was being committed, therefore creating probable cause for both the seizure

of the weapon and the arrest of Sanchez-Villar.").

III.     The Defendant's Spontaneous Admissions During Booking Should Not Be
         Suppressed

The defendant's admission that he borrowed his cousin's firearm was not

made in response to "custodial interrogation" by the officers and therefore does not implicate

his Fifth Amendment right against self-incrimination.  The Fifth Amendment requires certain

procedural safeguards when the accused is in custody and subject to interrogation.  See

Miranda v. Arizona, 384 U.S. 436, 444 (1966).  "[I]nterrogation can extend only to words or

actions on the part of police officers that they should have known were reasonably likely to

elicit an incriminating response," and does not include those words and actions "normally

attendant to arrest and custody."  Rhode Island v. Innis, 446 U.S. 291, 301–02 (1980).

16

"The collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest, however, does not ordinarily implicate the prophylactic protections of <u>Miranda</u>, which are designed to protect a suspect only during investigative custodial interrogation." <u>Rosa v. McCray</u>, 396 F.3d 210, 221 (2d Cir. 2005); <u>see also</u> <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601 (1990) (recognizing a "'routine booking question' exception which exempts from <u>Miranda</u>'s coverage questions to secure the 'biographical data necessary to complete booking or pretrial services'"). "The booking exception to Miranda applies only when three elements are satisfied: (1) the question asked by law enforcement seeks biographical data necessary to complete booking or pretrial services, (2) appear[s] reasonably related to the police's administrative concerns, and (3) the question is not likely to elicit an incriminating response." <u>United States v. Durand</u>, 767 F. App'x 83, 87 (2d Cir. 2019) (internal quotation marks omitted) (summary order).

All three of the elements set out in <u>Durand</u> are satisfied here. After arresting the defendant, the officers asked him typical pedigree questions: They asked him his name and for his identification; whether he was on supervised release or probation; and where he lives.[6] These are basic questions legitimately connected to the booking process. <u>See</u> <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 601 (1990) (approving of questions about the defendant's "<u>name</u>" and "<u>address</u>") (emphasis added); <u>United States v. Nogueira</u>, Case No. 08-CR-876 (JG), 2009 WL 3242087, at *2 (E.D.N.Y. Oct. 6, 2009) ("[T]here are certain

---

[6]    There is no evidence that the officers asked the defendant what he was doing in the area, as the Motion claims. <u>Compare</u> Mot. ¶ 5 <u>with</u> Ex. A at 23:35:19–36

questions that are so central to the booking and bail process that their permissibility cannot be in doubt.  It must be that questions asked at the time of booking regarding an arrestee's <u>name</u>, aliases, date of birth, <u>address</u>, place of employment and marital status fall within the purview of this exception.") (emphasis added).  For essentially the same reasons, these questions are "reasonably related to the police's administrative concerns."  <u>See</u> <u>Durand</u>, 767 F. App'x at 87.  An address is obviously necessary to process an arrest.  Whether the defendant is a local may also be relevant to contacting family members to alert them to the arrest.  And, finally, the officers' questions were not likely to elicit an incriminating response.  The defendant's address was not relevant to any aspect of the charge against the defendant — criminal possession of a weapon is, as the name suggests, a possessory crime — and the officers were not conducting an investigation of other conduct.[7]  Nor was the defendant's statement that he didn't like the neighborhood directly responsive to the officers' question, which called for his residence, not an evaluation of their current location.  The defendant's explanation that he had borrowed his cousin's weapon was even further afield.

Put differently, the defendant's statements were spontaneous; not in response to anything the officers said.  Unbidden admissions do not implicate <u>Miranda</u>, which applies only to statements made in response to "interrogation."  <u>Jackson v. Conway</u>, 763 F.3d 115, 137 (2d Cir. 2014) ("Absent an interrogation, there can be no infringement of the Fifth

---

[7]     For the same reasons, the defendant's statements during the ride back to the station house should not be suppressed.  <u>See</u> Mot. ¶ 7.  During the ride back to the station, the officers asked the defendant for his address and if he had any open cases or outstanding warrants.  <u>See</u> Ex. B at 23:38:00–23:39:27.  When the defendant asked the officers why they had stopped him, Ex. B at 23:38:36, Officer Morgan refused to discuss the substance of the case, Ex. B at 23:38:41–56 (explaining to the defendant that "right now it's just pertinent information").

Amendment rights Miranda was designed to protect.") (citing Edwards v. Arizona, 451 U.S. 477, 485 (1981)); United States v. Jacobson, 4 F. Supp. 3d 515, 532 (E.D.N.Y. 2014) ("Where statements are spontaneous — that is, where they are not the result of questioning or its functional equivalent — Miranda warnings are not necessary and the statements are not protected.").  Other than the booking questions described above, the only statement made by the officers was Officer Morgan's verbal agreement ("mmhmm") when the defendant gestured at the surrounding area and said "know what I mean."  But "mmhmm" is an answer, not the functional equivalent of a question, much less the functional equivalent of a coercive question.  A neutral response to a defendant's question is not interrogation.  See United States v. Briggs, 273 F.3d 737, 740–41 (7th Cir. 2001) (holding that "[a] police officer's response to a direct inquiry by the defendant does not constitute 'interrogation,'" and citing to cases from three other circuit courts); Renteria v. Clark, Case No. 08-CV-00547 (AWI), 2009 WL 256575, at *26 (E.D. Cal. Feb. 4, 2009) (explaining that "cursory and directly responsive" answers to a defendant's questions do not amount to coercive interrogation (quoting United States v. Taylor, 985 F.2d 3, 8 (1st Cir. 1993)); see also DAVID M. NISSMAN & ED HAGEN, LAW OF CONFESSIONS § 5.8 ("There is no interrogation, certainly, where the police response is simply a non-interrogatory answer to a question posed by a suspect.").  Neither is a statement that is "not one that sought or required a response."  United States v. Payne, 954 F.2d 199, 203 (4th Cir. 1992).

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully submits that the

defendant's motion to suppress should be denied in its entirety without a hearing.

Dated:     Brooklyn, New York
           October 11, 2021

                              Respectfully submitted,


                              JACQUELYN M. KASULIS
                              ACTING UNITED STATES ATTORNEY
                              Eastern District of New York
                              271 Cadman Plaza East
                              Brooklyn, New York 11201


                     By:     /s/ Nick Axelrod_____
                              Nick M. Axelrod
                              Assistant United States Attorney
                              (718) 254-6883