# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

October 17, 2021

By ECF & Email

The Honorable William F. Kuntz II
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   RE: <u>U.S.A. v. Steven Carter</u>, 20-CR-295 (WFK)

Your Honor:

  On behalf of my client, Steven Carter, I respectfully submit this Reply to the Government's Opposition papers, filed at ECF 32, and in further support of the Defendant's First Motion to Suppress, filed at ECF 29.

  The Government invites this Court to deny Mr. Carter's Motion to Suppress without a hearing. We urge that this invitation be rejected.

**I. PROCEDURAL ISSUES**

  A. *Watson and Gillette*

  Mr. Carter's papers are procedurally sufficient to require an evidentiary hearing. The Government cites no precedential authority for the proposition that a Defendant cannot get a Suppression Hearing without filing a personal, sworn affidavit. The Second Circuit authority on the subject is not so rigid. *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005). In *Watson*, the Court describes the threshold for triggering a suppression hearing:

> An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.

*Watson*, at 163. Indeed, the Government cites the Circuit case of *United States v. Gillette*, in which it wrote that "We by no means foreclose the possibility that, in the appropriate circumstances, a hearing should be held to establish the veracity of sworn allegations in an affidavit which inadequate on its face." *United States v. Gillette*, 383 F.2d 843, 848 (C.A.N.Y. 1967). We do concede that some District Courts have extended *Watson* to require a defendant's sworn affidavit before he can obtain a suppression hearing, while other courts have not required defendant affidavits, depending upon whether the claim is a Fourth, Fifth Amendment, or *Miranda* claims. Some have focused on the "personal knowledge" requirement. See, e.g., *United States v.Dickson*, 2011 WL 3701839 (SDNY 2011) (attorney affidavit sufficient and no defendant affidavit required where attorney's affidavit is based on the attorney's personal knowledge of the video recording [of the arrest scene]".)

This is not to suggest that *Watson* precludes the Court from requiring a defendant's affidavit. A case can be imagined in which the *Watson* specificity is uniquely within the defendant's own perception, a *Miranda* dispute being one. *United States v. White*, No. 98–1159, 1999 WL 4910, at*1 (S.D.N.Y. Jan. 4, 1999) (defendant alleging coercion in signing the waiver of *Miranda* rights form); *United States v. Martinez*, 634 F.Supp. 1144, 1147 (S.D.N.Y.1986) (*Miranda* rights waiver issue). But the Fourth Amendment is different. As stated in *United States v. Levasseur*, 618 F.Supp. 1390, 1392 (E.D.N.Y. 1985) (Glasser, J.), once the defendant has made a "preliminary showing the search was conducted without a warrant, then the burden shifts to the government to show that the warrantless search was reasonable."

The preliminary showing has been made here. The Government does not dispute the fact of the warrantless arrest (triggering its Fourth Amendment burden of proof) or standing (triggered by its claim that firearm was on defendant's person). The remaining questions of fact are intimately tied to "totality of circumstances" law, as I will attempt to outline below.

**B. *Simmons* and Use Immunity**

In any event, if Watson requires Mr. Carter to make an incriminating statement, counsel's reading of the law suggests that the Court will need to allocute him about how his statement can and cannot be used against him. There is the 1968 case of *United States v. Simmons*, 390 U.S. 377(1968), which seems to offer a "use immunity" protection to relieve defendants of the "intolerable choice" between Fourth Amendment litigation and Fifth Amendment privilege. 390 U.S. at 394.

Counsel's research suggests, however, that *United States v. Simmons*, 390 U.S. 377 (1968)has not aged so well. Indeed, this may be one of those areas of criminal procedure in whichexceptions consumed the rule. See, e.g., *United States v. Bryser*, 95 F.3d 182, 186–87 (2d Cir.2016) ("We decline to extend *Simmons* to afford use immunity for testimony concerning crimes other than those charged in the underlying criminal proceeding. *Simmons* in no way leads to the absurd result that incriminating statements may not be used as evidence because they were madeotherwise in aid, or under the umbrella, of a constitutional right."); *United States v. Baker*,

655F.Supp. 1040, 1042-43 (D.Or.1987) (*Simmons* does not prevent use in superseding indictment of defendant's admission of other crime in testimony at trial that ended in mistrial), aff'd, 850 F.2d1365 (9th Cir.1988).

Even if the Court performs such an allocation, cases now seem to require that the Court make a record of the specifics of the "use immunity" for such sworn statements. *United States v. Enix*, 212 F.Supp.3d 408, 408-09 (W.D.N.Y. 2016) (use immunity ruling under *Simmons* barred prosecution from using defendant's detention hearing testimony during criminal trial as part of its case-in-chief, but such testimony was admissible for impeachment purposes).

As set forth below, however, we do not need to go this far. The moving papers are sufficient to satisfy the *Watson* gate-keeping function, and we request a limited evidentiary hearingfocusing on the discrete issues set forth in the following section.

### C. Questions for Evidentiary Hearing

The evidentiary hearing requested is for direct and cross examination on three discrete issues:

**1. When did the Fourth Amendment intrusion begin?** This was a warrantless stop and raises highly fact-dependent questions. *United States v. Bayless* (2d Cir. 2000) (deciding whether something was a Terry protective search is a totality of the circumstances test). For example, while the law says that the police can "just ask questions" of suspects without Fourth Amendment consequences, the moment they "convey a message that compliance with their requests is required," the constitution is triggered. *United States v. Thompson*, 941 F.2d 66, 69 (2d Cir. 1991); see also *United States v. Compton*, 830 F.3d 55, 65 (2d Cir. 2016). What counsel has seen in the bodycam supports no claim of that he was "just being asked questions." Nor does the bodycam discovery support the claim that there was a pat down consistent with a *Terry* feel. Because these Fourth Amendment issues are generally judged by an objective "reasonable innocent person" test, *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992) (citations omitted), any subjective perceptions Mr. Carter could offer by way of an affidavit would be irrelevant. The inconsistencies between the hearsay statements in the government's opposition papers and what can be seen on the video must be resolved.

**2. Was the Fourth Amendment intrusion reasonable?** Again, this is a highly fact dependent inquiry. See, e.g., *United States v. Walker*, 965 F.3d 180 (2d Cir. 2020). In *Walker*, the Court carefully reviewed the evidentiary findings and record to find an abuse of discretion, reverse a conviction and remand for suppression. In connection with the facts important in the *Walker* case, Mr. Carter can offer nothing relevant by way of affidavit apart from confirming his race. See *United States v. Swindle*, 407 F.3d 562, 569-70 (2d Cir.2005) ("courts agree that race, when considered by itself and sometimes even in tandemwith other factors, does not generate reasonable suspicion for a stop.").

**3. Do mitigating doctrines such as attenuation or a good faith exception to the exclusionary rule apply?** Again, this is a highly fact-dependent inquiry involving evaluation of whether the exclusionary rule's application would in "appreciable deterrence". See Herring v. United States, 555 U.S. 135 (2009) (quoting *United States v. Leon*, 468 U.S. 897 (1984)). An affidavit from Mr. Carter would be immaterial here where the "pertinent analysis of deterrence and culpability is objective and [the Court's] good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer is chargeable with knowledge that his actions were illegal." *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (internal quotation marks and citation omitted).

Thank You for Your continued attention to and consideration in this matter.

Respectfully Submitted,

*Michael P. Padden*

Michael P. Padden, Esq.
Assistant Federal Defender
718-330-1240
michael_padden@fd.org

cc: AUSA Nicholas Axelrod
    Steven Carter, Washington Correctional Facility