# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

March 8, 2022

**By ECF**
The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

### Re: United States v.  Steven Carter, 20-CR-295 (WFK)

Your Honor:

On behalf of my client, Steven Carter, I, respectfully, submit this letter in response to the Government's filings of March 4, 2022, in which the Government raises new issues with respect to Motions in Limine (ECF 49 and 46) and Expert Testimony (ECF 50).

## MOTIONS IN LIMINE (ECF 49 and 46)

### Video Footage

The Government seeks the Court's permission to show the jury unspecified video footage of the actual crime but to preclude the Defense from showing other portions. ECF 49, at 1 (asking the Court to "Permit the Government to Introduce Portions of Video Footage and Preclude the Defendant from Introducing his Own Self Serving Statements").

This issue must be analyzed under Rule 106 of the Federal Rules of Criminal Procedure, which the Government has not done.  Rule 106 states:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.

Fed.R.Evid. 106.

The Government makes no effort to fit its request within Rule 106, focusing instead on hearsay rules.  Indeed it does not explain what "self serving" statements it seeks to redact, except to say that "among other things, following his arrest, the

1

defendant repeatedly questioned the officers regarding why they stopped him." ECF 49, at 6.

The Rule of Completeness requires that "the omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir. 1987); Fed. R. Evid. 106. This is a non-hearsay use of evidence, permitting the jury to hear and see the Government's video evidence in its natural context. Redacting only certain statements leads to unfair speculation and unfairness.

Even if the Court were to find that the unspecified "self-serving" statements the Government seeks to redact are not required under FRE 106, they are independently admissible for non-hearsay purposes.

First, the contextual evidence is admissible for the non-hearsay purpose of providing background and context to the stop and in evaluating the credibility of the officers. The jury should hear the Defendant's and officers' conversation, not for their truth, but rather to evaluate how the officer's testimony holds up once the real time footage is viewed. Unredacted footage is necessary to complete the story so that the jury can properly evaluate the credibility of the officers' explanation of what they observed.

Second, the contextual evidence of the Defendant's contemporaneous statements is independently admissible under the following hearsay exceptions:

- FRE 803(1) (Present Sense Impression – A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it);
- FRE 803(2) (Excited Utterance – A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.), and
- FRE 803(3) (State of Mind – A statement of the declarant's then existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remember to believed).

The relevant video evidence, showing the immediate and real time reactions of all involved to an exciting event – a street arrest – shows the actions and words of both Defendant and police officers contemporaneous with the relevant events in real time. The unredacted footage poses no danger of showing a "past memory or belief offered to prove the fact remembered or believed," which would be the only impediment to admissibility under FRE 803(3). The Government is free to argue to the jury that the

defendant is misrepresenting his state of mind when he talks about what is happening to him, but such an argument does not preclude the admissibility of the unredacted footage. *See, e.g., United States v. Cardascia*, 951 F.2d 474, 488 (2d Cir. 1991) (rejecting government argument that "the likelihood that the declarant is misrepresenting his state of mind is not an additional qualification to the admissibility of state of mind hearsay statements") (*citing United States v. Harris*, 733 F.2d 994, 1005 (2d Cir. 1984)); *see also United States v. DiMaria,* 727 F.2d 265, 270 (2d Cir. 1984) (reversing conviction where district court had excluded defendant's statement at scene of arrest that "I thought you guys were just investigating white collar crime; what are you doing here? I only came here to get some cigarettes real cheap.")  Similarly, in *Harris*, a case involving a charge of conspiracy to possess and distribute heroin, the district court improperly excluded a statement defendant made to an attorney and his parole officer that he believed the government was trying to set him up and that an informant had brought a government agent to him. The statement should have been admitted under the state of mind exception because it was a statement of the defendant's then existing state of mind. *Harris*, 733 F.2d at 1005.

We, therefore, respectfully submit that the Government's motion to preclude should be denied.

### Admissibility of Prior Conviction

The Government asks the Court to deem admissible evidence of the Defendant's prior conviction for firearm possession stemming from an August 3, 2013 arrest.  ECF 49, at 6.  It claims that the jury should hear about this nearly 10 year old crime despite the protections of FRE 404(b) because the 2013 conduct shows "opportunity and access to firearms" in 2020.  ECF 46, at 7.

This is a patent effort to subvert the prohibition against character and propensity evidence.  The only relevance of the Defendant's prior conviction for possessing a firearm in 2013 is that he is more likely to have knowingly possessed one in 2022.  In support of its application, the Government cites a non-published, summary order that lacks detail about the timing of the prior possession admitted by the district court: *United States v. Slaughter*, 248 F. App'x 210, 212 (2d Cir. 2007).  Nevertheless, the fact that *Slaughter* offers no solace to the Government can be gleaned from its citation to *United States v. Zappola*, 677 F.2d 264, 270 (2d Cir.1982), in which the Second Circuit approved the admission of a prior handgun possession that took place *six months* before the crime charged as "probative of [defendant's] access to such a weapon."  The *Zappola* case underscores how far off the mark is the Goverment's argument here, as in *Zappola* the prior act was that of showing the victim of a shooting the very firearm that was used to shoot the victim six months later.  Such evidence was probative of access to the very weapon used in the crime for which the defendant was on trial  in that case.  Here, there

is simply no connection between the 2013 gun possession and the current crime – other than as impermissible propensity evidence.

The Government's claim to admit this nearly 10 year old possession is therefore bereft of authority, violates Rule 404(b) and Rule 403, and must be rejected.

### Cross Examination of Defendant About Prior Conviction

Should Defendant testify, the Government seeks to cross examine the Defendant about his October 2020 conviction for Attempted Criminal Possession of a Controlled Substance in the Third Degree in violation of N.Y.P.L. 220.16(01). ECF 49, at 11.

The aforementioned prior conviction is clearly not a crime involving truthfulness.

It is true that FRE 609 provides that, if a defendant in a criminal case testifies, his "character for truthfulness" may be impeached by evidence of a criminal conviction under certain conditions. Thus, if "establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement," evidence of the conviction must be admitted. Fed. R. Evid. 609(a)(2). The 2020 conviction clearly does not fall within this category. But Rule 609(a)(1)(B) also permits impeachment if the was punishable by more than one year of imprisonment, where "the probative value of the evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1)(B).

In applying Rule 609(a)(1), district courts must "examine which of a witness's crimes have elements relevant to veracity and honesty and which do not." *United States v. Estrada*, 430 F.3d 606, 616 (2d Cir. 2005). While "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," *Id.*, some are clearly more probative than others. An attempted drug sale, unlike drug smuggling, is not a crime of dishonesty but rather a straightforward violation of law. Thus, "drug possession in the third degree has little bearing on the veracity of [the defendant] as a witness and thus, ranks fairly low on the impeachment value scale." *United States v. Brown*, 606 F. Supp. 2d 306, 319 (E.D.N.Y. 2009) (KAM) (citations omitted).

Moreover, the value of admitting the 2020 Third Degree Possession with Intent conviction is outweighed by its prejudicial effect given the "evil" often associated with drug dealing. Thus, the jury is more likely to view the testifying Defendant as having a propensity to commit a bad crime rather than a propensity to be dishonest.

### Mention of Possible Punishment

The Government seeks to preclude mention of possible punishment in that if convicted the Defendant faces a statutory maximum of 10 years' imprisonment. ECF 49, at 12. The Defendant has no intention of interjecting said punishment into the trial.

### Disbanding of the Anti-Crime Squad

The Government seeks to preclude the Defendant from referencing at trial that the NYPD Anti-Crime Squad was disbanded after his arrest.  ECF 49, at 14.  The Government contends that the "police commissioner's decision to disband the Anti-Crime Squad was in no way related to this case."  *Id.*

At this juncture, the defense invokes *Brady* and *Giglio,* as well as FRCP 5.1, to seek any materials in the Government's possession or reasonable available to the Government regarding the disbanding of the Anti-Crime Squad so that the defense can properly assess the Government's claim that the disbanding was in "no way related to this case."  To the extent that the disbanding reflected a culture of dishonesty and abuse of authority in street level investigations such as the one conducted here, we disagree with the Government's assessment and reserve our right to offer such evidence upon notice to the Court and the Government, and to seek appropriate sanctions should the Government fail to provide the requested disclosures.

### Defense Position on Government's Expert Witness (ECF 50)

#### Proffered Expert PO Clarence Batie

The Defense does not oppose the testimony of PO Clarence Batie regarding the fact that fingerprints were not found on the firearm in question.

At this juncture, the Defense does oppose the Government's effort to elicit testimony that fingerprints are "often not recovered on firearms and the reasons why." ECF, 50, at 1.  The defense seeks disclosure of the facts or data underlying the experts opinion pursuant to FRE 702, 703 and 705 and Fed. R. Crim. P. 16(b)(1)(C) (Government must disclose not just a written summary of any testimony" but must also "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.")

Under Rule 703, an "expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed . . . [i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject…"

The Defense cannot properly evaluate the admissibility of the opinion that fingerprints are "often not recovered on firearms and the reasons why" without reviewing the underlying facts and data upon which the expert intends to rely.

We therefore reserve the right to make such further objections and arguments once in receipt of the requested materials.

**Proffered Expert ATF Agent Matt Fleming – Interstate Commerce and More**

The Defense does not oppose the testimony of Agent Fleming regarding the identification of the firearm/interstate nexus.

The Defense does oppose testimony of Agent Fleming regarding the firearm's value on the "retail and secondary market."   ECF 50, at 1.  This testimony is irrelevant to the issues at this trial under FRE 401 and, even if it were relevant, its introduction would violate FRE 403.

Moreover, as the Defense has not yet seen the "forthcoming" materials that will be provided by the Government (ECF 50, at 1) relating to Special Agent Fleming's testimony, we respectfully reserve the right to make necessary and proper objections at the appropriate time and and retain and offer a counter expert if necessary.

Thank You for Your continued consideration of this matter.

Sincerely,
/s/ Michael P. Padden
Michael P. Padden
Federal Defenders of New York Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718.330.1240

cc:  Counsel of Record