UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

　　　　v.

STEVEN CARTER,

　　　　　　　　　　　　Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CR-295 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On March 14, 2023, Steven Carter ("Defendant") pled guilty to a one-count Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 70 months of incarceration, two years of supervised release with special conditions, forfeiture as set forth in the Plea Agreement and Forfeiture Order, and payment of a $100.00 special assessment.

## DISCUSSION

### I. Background

The New York City Police Department ("NYPD") led the investigation into Defendant for the instant offense. Presentence Investigation Report ("PSR"), ECF No. 80 ¶ 4. Three NYPD officers were driving in an unmarked patrol vehicle on April 29, 2020 at approximately 11:30 P.M. in East New York, Brooklyn when they observed Defendant standing alone near an intersection. *Id.* ¶ 5. Officers observed Defendant holding a weighted, wrinkly paper bag and sweating profusely despite the temperate weather. *Id.* One of the officers approached Defendant and asked him what was in the bag. *Id.* Defendant clutched the bag and moved it behind his back. *Id.* Another officer approached Defendant from the opposite direction and saw an L-shaped bulge in the bag, touched the bag, and felt an item resembling a firearm. *Id.* The officer removed the bag from Defendant's possession, opened it, and discovered a Smith & Wesson .40

caliber pistol bearing a serial number and ammunition. *Id.* The NYPD officers then arrested Defendant. *Id.* ¶ 6.

While being detained, Defendant told the arresting officers he had been waiting for his ride at the intersection, he did not like this neighborhood, and he borrowed his cousin's firearm while he came to this neighborhood. *Id.*

On August 6, 2020, a grand jury returned a sealed single-count Indictment charging Defendant with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 1. On August 24, 2020, then-Magistrate Judge Ramon E. Reyes Jr. ordered the Indictment unsealed on the request of the Government and arraigned Defendant on the Indictment. ECF Nos. 3-4.

On March 14, 2023, Defendant pled guilty to the sole count in the Indictment, charging that, on April 29, 2020, Defendant, knowing he had previously been convicted of one or more crimes punishable by a term of imprisonment exceeding one year, possessed a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* ¶ 1.

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

II. **Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. A sentencing court must also consider the Sentencing Guidelines in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision, which this Court has done.

The Sentencing Guidelines are merely advisory in light of the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220, 264 (2005). Nevertheless, the Guidelines range is the

"starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id* at 49. In this regard, the Guidelines provide "the framework for sentencing" and "anchor . . . the district court's discretion." *Molina-Martinez v. United States*, 578 U.S. 189, 198-99 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal reference and quotation marks omitted).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). It addresses each in turn.

### III. Analysis

#### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

##### 1. Family and Personal Background

Defendant was born on August 17, 1988 in Brooklyn, New York to the consensual union of Debra Carter and Roosevelt West. PSR ¶ 40. Defendant's parents separated when he was

3

approximately six years old. *Id.* ¶ 41. Defendant had a great relationship with his mother, who passed away at age 40 from heart failure. *Id.* ¶ 40. Defendant maintains a good relationship with his father, who is aware of the instant case and emotionally supportive of him. *Id.* Defendant has two paternal half-siblings and seven maternal half-siblings, some of whom are aware of the instant case and emotionally supportive of him. *Id.* ¶ 41.

Defendant grew up in the Bedford Stuyvesant neighborhood of Brooklyn, New York, and was raised primarily by his mother at first. *Id.* ¶ 42. In 1994, Defendant, then age six, and two of his maternal half-siblings were placed into foster care. *Id.* Defendant's foster mother psychologically abused him. *Id.* After three years, Defendant was returned to the custody of his mother. *Id.* In 2005, Defendant moved to live with his father in North Carolina before returning to Brooklyn two years later. *Id.*

From 2016 to 2022, Defendant was in a relationship with Denise Hendricks, with whom he has one daughter. *Id.* ¶ 43. After Defendant's instant arrest, Ms. Hendricks moved to Atlanta, Georgia with their 12-year-old daughter. *Id.* Defendant occasionally provided an unspecified amount of financial support for their daughter. *Id.* ¶ 44. If Defendant remains in custody, Ms. Hendricks is able to financially support their daughter. *Id.* Ms. Hendricks is aware of the instant case and is emotionally supportive of Defendant.

Defendant has also been in a long-term relationship with Charlia Brown for ten years, although Ms. Brown states they are not currently together. *Id.* ¶¶ 45- 46. Ms. Brown shares with Defendant five children ranging in ages from two to 12 years old. *Id.* ¶ 45. All five children live with Ms. Brown in Brooklyn. *Id.* Before the instant offense, Defendant provided an unfixed and unspecified amount of financial support for his five children with Ms. Brown. *Id.* Defendant stated it will be a challenge for Ms. Brown to financially support the children if he receives a

4

term of custody. *Id.* Ms. Brown described Defendant as a caring father, but noted that he became depressed and angry after his mother's passing. *Id.* Ms. Brown stated Defendant's instant incarceration has negatively impacted their children. *Id.* ¶ 46.

### 2. Educational and Employment History

Defendant attended several high schools from 2002 to 2007; however, he did not receive a high school diploma or equivalency. *Id.* ¶ 53. Starting in September 2002, Defendant completed ninth and tenth grade at New York Automotive High School, where he received three disciplinary suspensions. *Id.* After moving to North Carolina, Defendant attended Parkland High School for tenth grade. *Id.* He began eleventh grade at Mount Tabor High School before being expelled for fighting and completing the remainder of the year at Griffin High School. *Id.* In 2007, Defendant returned to New York and did not re-enroll in high school. *Id.*

As an adult, Defendant has held various off the books jobs interspersed by periods of unemployment and incarceration. *Id.* ¶¶ 54-58. His work experience includes time as a laborer in construction, a cleaner at beauty supply stores, and as a self-taught barber. *Id.* ¶ 55. Prior to his instant arrest, Defendant was unemployed and supported by Ms. Brown. *Id.* ¶ 54.

### 3. Prior Convictions

Defendant has a lengthy criminal history. His criminal record contains four felonies as an adult, including at least two prior felony firearms convictions. *Id.* ¶¶ 21-33. In 2010, Defendant received two convictions for misdemeanor assault with an ice pick and misdemeanor possession of narcotics. *Id.* ¶¶ 25-26. In 2011, Defendant was again convicted for misdemeanor assault, this time with a razorblade. *Id.* ¶ 28. In 2012, Defendant was convicted for attempted second-degree robbery, a Class D felony, and sentenced to two years imprisonment and two years of supervised release. *Id.* ¶ 29. The NYPD arrest report states in that case Defendant

brandished a gun and threatened to shoot the robbery victim. *Id.* In 2014, Defendant was convicted for criminal possession of a firearm, a Class E felony, and was sentenced to two to four years imprisonment. *Id.* ¶ 30. The NYPD arrest report states in that case Defendant was a passenger in a vehicle pulled over for speeding and was found to be in possession of a stolen, loaded .45 caliber revolver. *Id.* In 2016, Defendant was convicted for misdemeanor assault. *Id.* ¶ 31. In 2020, Defendant received two convictions for: (1) attempted criminal possession of a controlled substance in the third degree, a Class C felony, stemming from a 2019 arrest, and (2) criminal possession of a weapon in the third degree, a Class D felony, stemming from a June 2020 arrest. *Id.* ¶¶ 32-33. The latter arrest occurred after Defendant fired a gun during a dispute with his former girlfriend. *Id.* ¶ 33. Defendant was sentenced to three and a half years of imprisonment for the controlled substance conviction and a two to four years of imprisonment for the firearm conviction. *Id.* The sentences were ordered to run concurrently and to be followed by three years of supervised release. *Id.*

### 4. Medical and Mental Health

In 2008, Defendant was shot in his foot and hospitalized in Brooklyn. *Id.* ¶ 49. Otherwise, Defendant enjoys good health and has no serious or chronic medical history. *Id.* ¶ 50.

### 5. Substance Abuse

Defendant has no history of substance abuse, including drug use or excessive alcohol consumption. *Id.* ¶ 52. However, he has prior arrests and corresponding convictions for narcotics-related activities on June 15, 2006, October 18, 2010, and June 9, 2019. *Id.* ¶¶ 24, 26, 32.

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved possession of a firearm while knowing he had previous felony convictions. Defendant committed the instant offense while on pre-trial release in connection with his state arrest in 2019. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his offense.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of the Indictment charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). PSR ¶ 1.

Defendant faces a statutory maximum term of imprisonment of 10 years, which is to say 120 months, pursuant to 18 U.S.C. § 924(a)(2). *See* 18 U.S.C. § 924(a)(2) (2018) (including violations of 18 U.S.C. § 922(g) as an applicable offense resulting in a statutory maximum of 10

7

years of imprisonment), *amended by* Bipartisan Safer Communities Act, Pub. L. No. 117-159, 136 Stat. 1313, 1329 (2022) (making 15 years the maximum sentence for violations of 18 U.S.C. § 922(g)). Defendant also faces a term of supervised release of not more than 3 years. 18 U.S.C. § 3583(b)(2).

Defendant is eligible for one to five years of probation because the instant offense is a Class C Felony. 18 U.S.C. §§ 3561(c)(1), 3563(a)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces numerous other penalties, as well. Defendant faces a maximum fine of $250,000.00 pursuant to 18 U.S.C. § 3571(b). However, as Probation notes, based on Defendant's financial profile, he appears unable to pay a fine. PSR ¶ 61. The Court is also required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013. Moreover, Defendant is subject to the terms of the Preliminary Order of Forfeiture, which the Court entered on April 27, 2023. Preliminary Order of Forfeiture, ECF No. 79 (obligating Defendant to forfeit one Smith & Wesson .40 caliber model SD40 VE pistol bearing serial number FYJ5832; and 12 rounds of Smith & Wesson .40 caliber ammunition).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 922(g)(1) offenses is U.S.S.G. §2K2.1. PSR ¶ 12. The base offense level for committing the instant charge subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense is 20, pursuant to U.S.S.G. §2K2.1(a)(4)(A). *Id.* Defendant satisfies the requirement for a crime of violence under

U.S.S.G. §4B1.2 with his conviction on February 1, 2012 for attempted robbery in the second degree, in violation of New York Penal Law § 160.10, a Class D Felony under New York Law. *Id.* However, this figure is reduced by two levels per U.S.S.G. §3E1.1(a) due to Defendant's acceptance of responsibility. *Id.* ¶ 19. Taking all adjustments into account, Defendant's total adjusted offense level is 18. *Id.* ¶ 20.

Defendant's prior criminal convictions result in a criminal history score of 16. *Id.* ¶¶ 34-35. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of 16 establishes a criminal history category of VI. *Id.* ¶ 35. A total adjusted offense level of 18, combined with a criminal history category of VI, results in a recommended Guidelines range of imprisonment of 57 to 71 months. *Id.* ¶ 63.

All parties agree with this calculation. All parties determined the nature of the Defendant's offense and criminal history result in a total adjusted offense level of 18, a criminal history category of VI, and a Guidelines range of imprisonment of 57 to 71 months. *See* Def. Mem., ECF No. 88 at 2-3; Gov't Mem., ECF No. 87 at 2-3. As the defense and Government note, the parties stipulated in the plea agreement that Defendant's total net offense level is 24. Def. Mem. at 3; Gov't Mem. at 2; Plea Agreement, ECF No. 75 at 2. The discrepancy between the figures in the PSR and the plea agreement is the result of new Second Circuit caselaw that makes Defendant's 2020 conviction for attempted criminal possession of a controlled substance no longer a "controlled substance offense" under U.S.S.G. §2K2.1. *See United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022); *accord United States v. Sylvester*, No. 22-CR-2755 (2d Cir. Jan. 31, 2024). The parties all agree the Court should impose a sentence within the recommended Guidelines range in this case.

The U.S. Probation Office ("Probation") recommends the Court impose a sentence of 57 months of custody, to run consecutively to the prior undischarged terms of imprisonment arising from Defendant's June 2019 and June 2020 arrests and corresponding convictions. Probation's Recommendation, ECF No. 80-1 at 1. Probation recommends that this imprisonment be followed by two years of supervised release with special conditions. *Id.* Probation recommends the mandatory $100.00 special assessment. *Id.* Finally, Probation recommends Defendant be excused from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d) because Defendant poses a low risk of substance abuse. Probation bases this recommendation on the following factors: Defendant is appropriately in criminal history category VI based on his significant criminal past, including thirteen prior convictions made up of several misdemeanor charges as well as several serious felonies using firearms and other weapons; Defendant reported a difficult childhood, including time in an abusive foster care environment; Defendant is physically and mentally healthy with no history of drug or alcohol abuse; Defendant has no high school diploma or equivalency, only off the books work experience, and no assets; and the instant offense is serious, particularly given the escalating issue of gun violence in this country. *Id.* at 1-2. The Court adopts Probation's recommendation excusing Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

Defense counsel recommends the Court impose a sentence at the bottom of the guidelines range with credit for time already served, including time Defendant has served in the Metropolitan Detention Center ("MDC") in Brooklyn, New York, for the last two years. Def. Mem. at 3. Defense counsel bases this recommendation on the following factors: Defendant's remorse regarding his criminal conduct and its effect on society and his family; the fact that, according to defense counsel, the "lengthy" Guidelines sentence for the instant offense "does not

properly calibrate 'just punishment'"; the fact that Defendant has been incarcerated in the MDC during COVID-19 and the challenging pandemic conditions; and Defendant's "extraordinarily difficult" upbringing involving parental abandonment and abuse. *Id.* at 5-6. Defense counsel adds that Defendant's character letters highlight Defendant's "consistent theme" of "goodness." *Id.* at 6. Defense counsel emphasizes Defendant perseveres beyond his childhood traumas and is blessed with a loving family to support him upon his release from imprisonment. *Id.*

This Court has read and considered the letters written by Defendant's loved ones and family. Attached Letters 1-4 of Def. Mem., ECF No. 88-1; Def. Supp. Mem., ECF Nos. 90-1, 90-2. These letters talk about Defendant as a caring neighbor, a devoted brother, and a loving father and role model to his six children. *Id.* Defense counsel also included a letter from a potential construction employer, who states he will employ Defendant full-time upon Defendant's release. *Id.* at 4. The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends the Court impose a sentence within the Guidelines range of 57 to 71 months of imprisonment, with credit for time served. Gov't Mem. at 1. The Government objects to Defendant's request to receive credit for time served while at the MDC. Gov't Ltr. on Time Served Credit ("Gov't Ltr."), ECF No. 89 at 1. The Government explains Defendant is "currently serving a state sentence for criminal possession of a weapon in the third degree and attempted criminal possession of a controlled substance in the third degree," two convictions unrelated to Defendant's federal conviction. *Id.* Because Defendant "was transferred to the MDC pursuant to a writ of habeas corpus ad prosequendum to face federal charges," the Government argues that he remains in state custody. *Id.* (emphasis in the original). The Government contends that because Defendant's time is counted toward his state sentence, he

11

should not receive an "inappropriate windfall by counting his time spent at the MDC towards both his state and federal sentences." *Id.* at 1-2.

In its recommendation, the Government emphasizes the seriousness of the instant offense in light of Defendant's numerous prior convictions and sentences, including two prior gun-related convictions in which Defendant threatened to shoot victims. Gov't Mem. at 3. The Government notes that Defendant's prior sentences have not sufficiently deterred him from criminal conduct. *Id.* According to the Government, a Guidelines sentence is necessary for specific deterrence because it will "put a stop to the defendant's repeating cycle of criminal conduct." *Id.* In addition, the Government argues such a sentence will serve general deterrence because it will "send a message to the community that conduct like the defendant's is unacceptable" and "that serious consequences will follow from unlawfully possessing firearms." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and

Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

G. **The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This is not applicable in Defendant's case.

## CONCLUSION

In accordance with the analysis above, the Court finds a sentence of 70 months of incarceration, to run consecutive to Defendant's undischarged state sentences, two years of supervised release with special conditions, forfeiture as set forth in the Plea Agreement, ECF No. 75, and Preliminary Order of Forfeiture, which the Court makes final today and by its terms becomes final as of this sentencing, ECF No. 79, and payment of a $100.00 special assessment is appropriate and comports with the dictates of § 3553. The Court finds, moreover, this sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 80, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.



SO ORDERED.

/s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 16, 2024
Brooklyn, New York

13